UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| KIVON D. REDD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY OF EVANSVILLE, INDIANA, | ) | 3:12-cv-00070-RLY-WGH |
| MICHAEL R. WARD, | ) | |
| JOHN PIESZCHALSKI, | ) | |
| BRAD HILL, OR HIS SUCCESSOR IN | ) | |
| OFFICE, AS THE CHIEF OF POLICE OF | ) | |
| THE CITY OF EVANSVILLE, INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' AMENDED MOTION FOR SUMMARY
JUDGMENT and REQUEST FOR ORAL ARGUMENT**

In the early morning hours of May 29, 2010, the plaintiff, Kivon D. Redd, was arrested by Officer Michael R. Ward and Officer John Pieszchalski from the Evansville Police Department ("EPD") for disorderly conduct and resisting law enforcement. Following his acquittal, Plaintiff brought the present lawsuit under 42 U.S.C. § 1983 ("Section 1983") against the City of Evansville, Officer Ward, Officer Pieszchalski, and then-Chief of Police, Brad Hill, for various violations of his Fourth and Fourteenth Amendment rights. Plaintiff also brings three *Monell* claims against Chief Hill, in his official capacity, arising from Officer Ward's use of pepper spray, and three state law claims for false arrest, false imprisonment, and battery. Defendants now move for summary judgment in an amended motion. For the reasons set forth below, Defendants'

1

Amended Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendants' request for oral argument is **DENIED**.

I.      **Factual Background**

Nearly every material fact at issue is disputed.  As this is a motion for summary judgment brought by the Defendants, the court must take the facts and all reasonable inferences that arise therefrom in the light most favorable to the Plaintiff.

On May 29, 2010, Nikita Owens hosted a graduation party at the Scottish Rite with approximately 70 invited guests and four chaperones.  (Filing No. 61-2, at ECF p. 4).  The party began at 9:00 p.m., and was described as a "normal party atmosphere" with music, dancing, and non-alcoholic refreshments.  (Filing No. 65-4, at ECF p. 7; Filing No. 65-5, at ECF p. 3).  Plaintiff drove to the party with Kendal Brown, a close friend of Nikita's, and Diana Snaden.  (Filing No. 65-4, at ECF p. 5).   They arrived between 10:30 and 11:00 p.m.  (Filing No. 65-4, at ECF p. 5).

Not long after Plaintiff, Brown, and Snaden arrived, a verbal altercation broke out among two males.  (Filing No. 65-4, at ECF p. 7; Filing No. 65-5, at ECF p. 4).   Betty Boyd, the mother of one of the party's hosts, Tayra Wiley, escorted one of the men involved out of the party.  (Filing No. 65-4, at ECF p. 7).  Not long before 12:30 a.m., a second verbal altercation arose between two uninvited males.  (Filing No. 65-5, at ECF p. 5; Filing No. 61-2, at ECF pp. 4-8).  Due to this second altercation, the chaperones decided to call off the party.  (Filing No. 65-5, at ECF pp. 4-5).  The lights in the Scottish Rite were turned on, the music stopped, and the chaperones told the party guests to exit the building.  (Filing No. 65-4, at ECF p. 8).

The altercation moved into the Scottish Rite parking lot, with a group of spectators following along to watch. (Filing No. 65-4, at ECF p. 9; Filing No. 65-5, at ECF. P. 5). Seeing this, Boyd instructed one of the chaperones, Damita Thompson, to call 911. (Filing No. 65-5, at ECF p. 5). Internal Affairs records show the call was made at 0:28:08 (12:28:08 a.m.). (Filing No. 61-13).

Officer Ward and Officer Pieszchalski were the first respondents to arrive at the Scottish Rite, as they were patrolling the downtown area, and were only blocks away. (Filing No. 65-7, at ECF p. 2). They arrived within approximately two minutes. (Filing No. 61-13) (Internal Affairs Timeline showing they were "about to arrive" at 0:29:35). Officer Ward testified that as they approached the scene, he turned the vehicle's lights and siren off, and observed pockets of people all over the parking lot in groups of two to five people. (Filing No. 65-8, at ECF p. 3; Filing No. 60-1, at ECF p. 2). Officer Pieszchalski testified that the crowd was so loud, the majority of those in the parking lot did not know he was there, despite the fact that he was yelling and screaming for them to disperse. (Filing No. 65-7, at ECF p. 5). Because the crowd was unaware of his presence, he did not feel threatened by the crowd. (Filing No. 65-7, at ECF p. 5).

Officer Ward observed six males in a tight group; he noted that two were being held back by two females. (Filing No. 65-8, at ECF p. 5; Filing No. 65-4, at ECF p. 13). Soon thereafter, the two males broke free. (Filing No. 65-8, at ECF p. 5 (Officer Ward testifying that the two broke free within two minutes of his arrival on the scene); Filing No. 65-7, at ECF p. 5 (Officer Pieszchalski testifying that the two broke free within "15, 20 seconds" after his arrival on the scene). At that point, Officer Ward used a MK 46 riot

3

extinguisher (a/k/a an OC canister) to disperse oleoresin capsicum, or "pepper spray," into the crowd without any prior warning. (Filing No. 65-8, at ECF pp. 5, 7; Filing No. 65-7, at ECF p. 5) (Officer Piezschalski testifying that he was hit by pepper spray after telling the crowd to leave three or four times).

Plaintiff was one of the party-attendees watching the altercation. Plaintiff estimates that at the time Officer Ward dispersed the pepper spray, he was three to four feet from the circle of people watching the verbal fight, and his back was to Officer Ward, who was roughly five feet behind him. (Filing No. 65-4, at ECF p. 13). The spray hit the left side of his face, his left eye, and his back/neck area. (Filing No. 65-4, at ECF p. 13). As he started to jog toward his car, he saw Officer Ward with the OC canister in his hand, and said in a loud voice, "Why did you spray me? That's bullshit. I didn't do anything." (Filing No. 65-4, at ECF p. 15). Officer Ward walked up to him and said, "What did you say? Get on the ground." (Filing No. 65-4, at ECF p. 15; Filing No. 61-4, at ECF p. 4). Plaintiff's friend, Kendal Brown, came over and asked Officer Ward if he could take Plaintiff home. (Filing No. 65-4, at ECF p. 16). Officer Ward said "No." (Filing No. 65-4, at ECF p. 16). Officer Ward then told Plaintiff to "get on the ground now" or he would spray Plaintiff again. (Filing No. 65-4, at ECF p. 16; Filing No. 61-4, at ECF p. 4). Plaintiff did as he was told; he laid face down and put his hands behind his back. (Filing No. 65-4, at ECF p.p. 16-17). After Officer Ward put handcuffs on him, he (Officer Ward) ran across the parking lot, and Officer Pieszchalski put his foot on Plaintiff's back. (Filing No. 65-4, at ECF p. 16). Plaintiff asked Officer Pieszchalski what he was being arrested for, but received no response. (Filing No. 65-4 at ECF p. 17).

4

Plaintiff then said, "You don't know who you're fucking with. You don't know who my father is. I didn't do anything. This is – this is not right." (Filing No. 65-4, at ECF p. 17). By the time the second EPD car arrived at 0:32:28 (12:32:28 a.m.), Plaintiff was in custody. (Filing No. 61-13) (Internal Affairs Timeline showing Officer Hirshman and Craig arriving at 0:32:28). Plaintiff estimates he was on the ground for three to five minutes. (Filing No. 65-4, at ECF p. 18). During that time and due to the pepper spray, his face burned, his breathing was somewhat labored, and he could barely see out of his left eye. (Filing No. 65-4, at ECF p. 15).

Following the incidents at the Scottish Rite, Chief Hill ordered an investigation by Internal Affairs. (Filing No. 65-6, at ECF p. 3). Neither Internal Affairs, nor Chief Hill, found fault in the conduct of the officers. Filing No. 65-6, act ECF p. 2).

On August 18 and 19, 2010, Plaintiff went to trial on charges of disorderly conduct and resisting law enforcement under Cause No. 82D02-1007-CM-000704. The presiding judge from the Vanderburgh Superior Court granted a motion for judgment on the evidence in favor of Plaintiff on the disorderly conduct charge, and the jury found him not guilty for resisting law enforcement. This case followed.

Any additional facts necessary to the disposition of this motion will be addressed in the Discussion Section.

## II. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Summary judgment is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of designated evidence which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome of the case under the governing law. *Clifton v. Schafer,* 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See* FED. R. CIV. P. 56(a); *Anderson,* 477 U.S. at 255; *Abdullahi v. City of Madison,* 423 F.3d 763, 773 (7th Cir. 2005) (reversing summary judgment for defendant in excessive force case).

**III.    Section 1983 Claims**

Plaintiff brings two Fourth Amendment claims against Officer Ward and Officer Pieszchalski under Section 1983. That statutory section provides a private cause of action against a person, who acting under color of state law, deprives an individual of any "rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (quoting 42 U.S.C. § 1983). "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced." *Bublitz v. Cottey*, 327 F.3d 485, 488 (7th Cir. 2003).

The Fourth Amendment issues presented surround Plaintiff's arrest. First, he alleges Officer Ward did not have probable cause to arrest him. Second, he alleges Officer Pieszchalski used excessive force immediately after he was handcuffed. Plaintiff also brings three *Monell* claims against Chief Hill in his official capacity for his alleged failure to implement a policy or practice with regard to appropriate crowd control measures and failure to train EPD officers on the appropriate use of crowd control agents such as pepper spray.

**A.    Qualified Immunity**

Defendants raised the defense of qualified immunity for the first time in their reply brief. Plaintiff filed a surreply arguing that the issue is, therefore, waived.

As a general proposition, an issue raised for the first time in a reply brief is waived. *Mendez v. Perla Dental*, 646 F.3d 420, 423-24 (7th Cir. 2011). The purpose of the rule is that the non-moving party should have the opportunity to respond to the

7

moving party's arguments. Here, by filing the surreply and arguing, in the alternative, why Defendants are not entitled to the defense, the rationale for the rule no longer exists. Accordingly, the court will address the applicability of the defense.

A determination of qualified immunity must be made early in the litigation, as "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). "[T]wo questions are pertinent to the defense: whether the facts alleged show that the state actor violated a constitutional right, and whether that right was clearly established." *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The court has discretion to determine in which order the questions should be answered; "a negative answer to either one is enough to establish the defense of qualified immunity." *Id*. Although the privilege of qualified immunity is a defense, Plaintiff carries the burden of defeating it. *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003).

**B.    False Arrest**

**1.    Constitutionality of the Arrest**

The Fourth Amendment prohibits unreasonable searches and seizures by law enforcement. To be deemed reasonable, a warrantless arrest (a type of "seizure") made in public must be supported by probable cause. *Gutierrez v. Kerman*, 722 F.3d 1003, 1007 (7th Cir. 2013). Thus, the existence of probable cause is an absolute defense to a Section 1983 claim of false arrest. *Id*. (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)).

Probable cause to arrest exists when an officer reasonably believes, in light of the facts and circumstances within the knowledge of the arresting officer at the time of the arrest, that the suspect had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Gutierrez*, 722 F.3d at 1008. The test is an objective one, which evaluates whether probable cause existed "on the facts as they would have appeared to a reasonable police officer in the position of the arresting police officer – seeing what he saw, hearing what he heard." *Kelly*, 149 F.3d at 646 (internal quotation marks and citation omitted). "It is a practical, commonsense standard that requires only the type of fair probability on which reasonable people act." *Gutierrez*, 722 F.3d at 1008.

To prevail, Officer Ward must establish, as a matter of law, that he had probable cause to arrest Plaintiff for disorderly conduct and resisting law enforcement. The crime of disorderly conduct consists of the following elements:

> A person who recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful assembly of persons.

Ind.Code § 35-45-1-3. The crime of resisting law enforcement consists of the following elements:

> A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer . . . . ; or (3) flees from a law enforcement officer after the officer has, by visible or audible means . . . identified himself or herself and ordered the person to stop.

Ind.Code § 35-44.1-3-1. The evidence presented in the light most favorable to the Plaintiff reflects that, at the time Officer Ward and Officer Pieszchalski arrived with the lights and siren of their police vehicle turned off, Plaintiff was observing a verbal

9

altercation. Plaintiff was unaware that the police arrived and were in the parking lot of the Scottish Rite until he was hit with pepper spray on the left-hand side of his face and neck area. (Filing No. 61-4, at ECF p. 4 ("Q: So your first knowledge of the police being there was . . . A: Was me getting pepper sprayed.")). After feeling the pepper spray on his skin, Plaintiff ran "a good ten (10) feet", turned around, and asked Officer Ward in a loud voice, "Why did you spray me? That's bullshit. I didn't do anything wrong."

Plaintiff's response is not indicative of disorderly conduct; he did not engage in combative or tumultuous conduct[1], make unreasonable noise, or disrupt a lawful assembly. Moreover, Plaintiff consistently testified, during the Internal Affairs investigation, during his criminal trial, and in his civil deposition, that after Officer Ward told him to get on the ground, he did so, and placed his hands behind his back. With respect to the charge of resisting law enforcement, Plaintiff testified that he did not resist and that he, in fact, surrendered.

The facts as presented by the Plaintiff are heavily disputed by the Defendants. Indeed, Defendants maintain the parking lot had in excess of 100 people, not including those in the street; the fight was physical between two shirtless young men; the crowd was raucous and did not respond to the Officers' repeated requests to exit the property; Plaintiff was aggressive, refused to leave the parking lot despite repeated requests to leave, thereby instigating a verbal altercation with the Officers; and Plaintiff physically resisted arrest, necessitating Officer Pieszchalski to place his knee in Plaintiff's back to

---

[1] Tumultuous conduct is defined as conduct that results in, or is likely to result in, serious bodily injury to a person or substantial damage to property. Ind. Code § 35–45–1–1.

effectuate the arrest. Given these two divergent accounts, the court finds a genuine issue of material fact exists as to whether Officer Ward had probable cause to arrest Plaintiff for disorderly conduct and resisting law enforcement.

### 2. Qualified Immunity

Plaintiff's constitutional right to be free from arrest without probable cause is clearly established. *Fleming v. Livingston Cnty.*, 674 F.3d 874, 879 (7th Cir. 2012) (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). That is not the end of the inquiry, however, as "the corresponding doctrine of qualified immunity for police officers has also long been recognized." *Id*. Under that doctrine, "a defendant is entitled to qualified immunity in a false-arrest case when, if there is no probable cause, 'a reasonable officer could have mistakenly believed that probable cause existed.'" *Id*. This is known as "arguable probable cause." *Id.* "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law.'" *Id*. (quoting *Humphrey*, 148 F.3d at 725)).

Accepting as true for the limited purpose of summary judgment Plaintiff's account of the facts, the court finds Officer Ward could not have reasonably thought that he had probable cause to arrest Plaintiff for disorderly conduct or for resisting law enforcement. *See* Section III.B.1. Plaintiff's choice of words could have been better, but to arrest him for what he said would be tantamount to arresting him for engaging in free speech (as found by the Circuit Judge in Plaintiff's underlying criminal trial). Moreover, Plaintiff

claims that after Officer Ward told him to "get on the ground," he complied; he did not fight by word or deed. Accordingly, Plaintiff's false arrest claim must be resolved by a trier of fact. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1000 n. 13 (7th Cir. 2003) ("Because the facts within Officer Kovats' knowledge at the time of the arrest are a matter of dispute between the parties, summary judgment on the basis of 'arguable probable cause' also is inappropriate.").

### C. Excessive Force

"[T]he Fourth Amendment prohibits law enforcement from using excessive force during the execution of a seizure." *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)) "[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. That right, however, is not without limits. A "police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne v. Pauley*, 337 F.3d 767, 778 (citing *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). Factors the court may consider include "the severity of the crimes at issue, whether the suspect posed an immediate threat to the safety of others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Graham*, 490 U.S. at 396).

Plaintiff's excessive force claim is based on two incidents: (1) Officer Ward's use of pepper spray; and (2) the events occurring immediately after Plaintiff was told to "get on the ground."

### 1. Pepper Spray

Plaintiff claims that, at the time Officer Ward dispersed pepper spray, he was just an innocent bystander who was at the wrong place at the wrong time. "Any Fourth Amendment inquiry necessarily begins with a determination of whether a search or seizure actually occurred." *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010). Notably, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*." *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998); *see also Martien v. City of Schenectady*, No. 1:04-cv-679 (FJS/RFT), 2006 WL 1555565, at *3 (N.D.N.Y. June 2, 2006) ("[P]olice action . . . that negligently causes injury to bystanders does not equate to an excessive use of force toward those bystanders.") (quotation marks and citation omitted)).

It is undisputed that Officer Ward did not disperse pepper spray in order to "seize" Plaintiff. Rather, Officer Ward used the pepper spray to, in his words, disperse the crowd. Accordingly, Plaintiff's Fourth Amendment excessive force claim cannot survive. *Lewis*, 523 U.S. 833 (noting the Fourth Amendment "covers only 'searches and seizures'"). Plaintiff's only recourse is grounded in the Fourteenth Amendment's due process clause. *Id.* at 844 (applying substantive due process standards to claim of arbitrary police action not encompassed by Fourth Amendment); *Graham*, 490 U.S. at

13

388 (holding that excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard").

"The guarantee of due process serves to protect 'the individual against arbitrary action of government.'" *Schaefer v. Goch*, 153 F.3d 793, 797 (7th Cir. 1998) (quoting *Lewis*, 523 U.S. at 845). Where the exercise of governmental authority involves law enforcement officials, "a plaintiff's substantive due process rights are violated where the alleged abuse of government power 'shocks the conscience.'" *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)). Conscience-shocking behavior is likely to be found where the "conduct [is] intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849; *see also Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998) (police action violates substantive due process when it is grossly disproportionate to the need for action under the circumstances, and was inspired by malice, such that his actions amounted to an abuse of official power that shocks the conscience).

Plaintiff's argument centers around Officer Ward's negligent use of pepper spray – *i.e.*, that he should have waited for back-up to arrive rather than immediately use pepper spray to disperse those in the parking lot, that he should have considered the physical impact of pepper spray on the individuals in the parking lot before using it, and that he should have considered other alternatives available to him to disperse the crowd, such as using a PA system. Mere negligence, however, is insufficient to give rise to a substantive

due process claim. *Bublitz*, 327 F.3d at 491. Accordingly, Plaintiff's claim of excessive force based upon Officer Ward's use of pepper spray must be dismissed.

### 2. Events Following His Arrest

Plaintiff also argues that, during the course of his arrest, he was held down on the ground, stomach first, by Officer Pieszchalski's foot for three to five minutes. The EPD's Standard Operating Procedure ("SOP") for chemical sprays specifically instructs – "Do not leave the suspect on stomach." (Filing No. 60-5, at ECF p. 13). Plaintiff maintains that he was not actively resisting arrest; thus, forcing him to remain stomach down in the parking lot, while handcuffed and still feeling the burning effects of pepper spray, could be found by a reasonable juror as an unreasonable use of force. Accordingly, on this record, the court finds Plaintiff raises a genuine issue of material fact as to whether Officer Pieszchalski used excessive force.

With respect to qualified immunity, it was clearly established at the time of Plaintiff's arrest that an officer could not use more force than is reasonably necessary to execute an arrest. *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 529-30 (7th Cir. 2012) ("Force is reasonable only when exercised in proportion to the threat posed") (quoting *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010)); *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007); *Hill v. Miller,* 878 F. Supp. 114, 116 (N. D. Ill. 1995) ("[I]t is well established that the use of any significant force . . . not reasonably necessary to effect an arrest – as where the suspect neither resists nor flees or where the force is used after a suspect's resistance has been overcome or his flight thwarted – would be constitutionally unreasonable." (internal quotation marks and

citation omitted)). Accepting as true for the limited purpose of summary judgment Plaintiff's contention that, after he surrendered, he was held down on the ground by Officer Pieszchalski's foot, stomach first, for several minutes after being sprayed with pepper spray, in contravention of the EPD's SOP, Officer Pieszchalski could not have reasonably thought that the force he used was lawful.

### D. *Monell* Liability

Plaintiff's *Monell* claims against the City are premised on Officer Ward's use of pepper spray as a means of crowd control. (*See* Filing No. 58, at ECF pp. 29-35). He argues that: (1) the EPD's current policies on crowd control are insufficient; (2) EPD failed to provide proper training to its officers with regard to the use of pepper spray; and (3) EPD has a widespread and well settled practice of using pepper spray against innocent bystanders.

"[I]t is well established in this Circuit that a municipality's liability for a constitutional injury requires a finding that the individual officer[] [is] liable on the underlying substantive claim." *Treece v. Hochstetler*, 213 F.3d 360, 364 (7th Cir. 2000), *cert. denied*, 531 U.S. 957 (2000) (internal quotation marks and citation omitted); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Here, the court found Officer Ward did not use excessive force against Plaintiff by his use of pepper spray. Accordingly, Plaintiff's *Monell* claims against the City must fail as a matter of law.

### E. State Law Claims

Lastly, Plaintiff brings state law claims for false arrest, false imprisonment, and battery against the Officers. Plaintiff's claims for false arrest and false imprisonment must be tried to a jury for the reasons set forth in Section III.B.&C. With respect to Plaintiff's claim for battery, Defendants maintain they are entitled to immunity under the law enforcement provision of the Indiana Tort Claims Act ("ITCA"), Indiana Code Section 34-13-3-3(8), which provides that a governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from "[t]he adoption and enforcement of or failure to adopt and enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment." In *Kemezy v. Peters*, the Indiana Supreme Court held that the use of excessive force is also included as conduct not immunized under the ITCA. *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993).

Under Indiana law, a police officer may use only the force that is reasonable and necessary for effecting an arrest. Ind. Code § 35-41-3-3(b). "If a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery." *Fidler v. City of Indianapolis*, 428 F. Supp. 2d 857, 866 (S. D. Ind. 2006) (citing *Crawford v. City of Muncie*, 655 N.E.2d 614, 622 (Ind. Ct. App. 1995)). The Indiana excessive force standard is basically the same as the federal standard outlined above. *Id.* (citing *O'Bannon v. City of Anderson*, 733 N.E.2d 1, 3 (Ind. Ct. App. 2000)). Accordingly, the same genuine issues of material fact that preclude the entry of summary judgment on Plaintiff's Section 1983 excessive force claim also precludes summary

judgment on Plaintiff's state law claim for battery based on the actions of Officer Pieszchalski.

## IV. Conclusion

Defendants' Amended Motion for Summary Judgment is **GRANTED in part**, and **DENIED in part** (Filing No. 65). Defendants' Amended Motion is **GRANTED** with respect to Plaintiff's Section 1983 excessive force claim against Officer Ward for his use of pepper spray, and Plaintiff's Section 1983 *Monell* claims against the City and Chief Hill. Defendants' Amended Motion is **DENIED** with respect to Plaintiff's Section 1983 false arrest claim against Officer Ward, Plaintiff's excessive force claim against Officer Pieszchalski, and Plaintiff's state law false arrest, false imprisonment, and excessive force/battery claims. Defendants' Motion for Oral Argument (Filing No. 68) is **DENIED**, and Defendants' original Motion for Summary Judgment (Filing No. 52) is **DENIED as MOOT**.

**SO ORDERED** this 30th day of May 2014.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.